UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL  ACTION # 1:17-CV-10473-MBB

_____

KATELIN  O.  WITH HER PARENTS
MARGART O. & JOHN O.

V.

MASSACHUSETTS BUREAU OF
SPECIAL EDUCATION APPEALS
And THE DENNIS YARMOUTH
REGIONAL SCHOOL DISTRICT

_____

**PLAINTIFF'S MEMORANDUM AND ARGUMENT IN SUPPORT OF THEIR FOR
SUMMARY JUDGEMENT**

**INTRODUCTION**

Plaintiffs bring this argument for summary judgment in the context of an appeal of an
adverse Decision from the Bureau of Special Education Appeals ("BSEA"). Plaintiffs contends
that in arriving at the decision, the Hearing Officer mischaracterized the issues in the case,
ignored crucial testimony by Plaintiff's witnesses, failed to analyze conflicting testimony,  limited
the testimony of the Plaintiffs and made factual findings which were not supported by the
evidence in the record.  Taken as whole, the preponderance of the evidence, when analyzed
accurately, supports Plaintiff's contention that Katelin O's 5th year of high school was appropriate
and reimbursement for her 5th year was appropriate and reasonable as the Dennis-Yarmouth
school district did not provide necessary services for Katelin to over-come her significant
language based learning disability.

**STATEMENT OF THE FACTS**

Plaintiff incorporates by reference the Statement of the Facts set forth in Plaintiff's Complaint
and Plaintiff's Local Rule 56.1 Statement of Material Facts filed with this argument.

# BACKGROUND

## A. Statutory Framework

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. *Farmers Ins. Exch. v. RNK, Inc*, 632 F. 3d 777, 782 (1ˢᵗ Cir. 2011). A fact is material if it has the potential of determining the outcome of the litigation. *Id.* The moving party must assert that there is an absence of evidence to support the non-moving party's position. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990). To avoid summary judgment, the opposing party must produce affirmative evidence demonstrating a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Mesnick v. General Elec. Co.,* 950 F.2d 816, 825 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). "[T]he nonmoving may not rest upon mere allegations, but must adduce specific provable facts demonstrating that there is a triable issue. *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989). Conclusory allegations, improbable inferences, and unsupported speculation are insufficient to create a genuine issue of material fact to survive summary judgment. *Sullivan v. City of Springfield,* 561 F.3d 7, 14 (1st Cir.2009). Nor may the opposing party "derail summary judgment by the primitive expedient of insisting that his opponent's evidence should be disbelieved." *Abbott v. Bragdon,* 107 F.3d 934, 942 (1st Cir.1997).

**STANDARD OF REVIEW**

An party aggrieved by the findings and decision of a state educational agency with respect to the placement and education of a special needs child:

> shall have the right to bring a civil action...which may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the **preponderance of the evidence** shall grant such relief as the court determines is appropriate (emphasis added).

It is well settled law that a trial court must apply an intermediate standard of review of the administrative agency decision – "a standard which, because it is characterized by independence of judgment, requires a more critical appraisal of the agency determination than clear-error review entails, but which, nevertheless, falls well short of complete *de novo* review." *Lenn v. Portland School Committee*, 1083 F.2d 1083, 86 (1st. Cir. 1993). This standard of review is substantially different than the usual more deferential review standard in court reviews of administrative agency decisions.

> We disagree with defendants insofar as they would limit the district court to the kind of judicial review of agency action contemplated under the Administrative Procedure Act. The statute unambiguously provides that a reviewing court may take cognizance of evidence not before the state educational agency and must base its decision on the preponderance of the evidence before it. As such, the review mechanism the Act creates stands in sharp contrast to the usual situation where a court is confined to examining the record made before the agency. Doe v. Anrig, 692 F.2d 800, 805 (1st Cir. 1990).

Massachusetts law provides that it is the goal of Massachusetts public education is to provide school age children, such as the plaintiff, "**the opportunity to reach their full potential and lead lives as participants in the political and social life of the Commonwealth and**

**contributors to its economy"** and the statute further requires services and programs delivered to

all students services **"sufficient to provide a high quality public education to every child"**.

See MGL c. 69, Section 1[1] which was first enacted in 1837 and updated frequently. Congress

designed the IDEA as part of an effort to help states provide educational services to disabled

children and it was patterned after Massachusetts Education Law, MGL c. 71B.  Specialized

education is referred to as "specially designed instruction at no costs to the parents to meet the

unique needs of a child with a disability…" 20 USC 1401 (29), which is clearly broad and

inclusive language. Congress designed the IDEA as part of an effort to help states provide

educational services to disabled children and it was patterned after Massachusetts Special

Education Law, MGL c. 71B.  The IDEA requires that special education and supportive services

to be provided free of charges, See 20 USC 1401 (9) See Also,  DB et. al, v. Esposito 675 F.3d,

26 (1st Cir. 2012) If a school systems is unable to furnish a  child with a disability proper and

effective services, through a public school placement, they are obligated to subsidize the child in

a private program. The education regulations in Massachusetts incorporate the law into the

special education regulations.  See 603 CMR 28.01 (3) .  "the purpose of 603 CMR 28.00 is to

ensure that eligible Massachusetts students receive special education services designed to

develop the student's individual potential in the least restrictive environment in accordance with

applicable state and federal laws." See also 603 CMR 28.02(17)  which requires the state to

provide the student services to make documented growth in the acquisition of knowledge and

---

[1]  It is hereby declared to be a paramount goal of the commonwealth to provide a public education system of sufficient quality to extend to all children including a limited English proficient student as defined in section 1 of chapter 71A, and also, including a school age child with a disability as defined in section 1 of chapter 71B the opportunity to reach their full potential and to lead lives as participants in the political and social life of the commonwealth and as contributors to its economy. It is therefore the intent of this title to ensure: (1) that each public school classroom provides the conditions for all pupils to engage fully in learning as an inherently meaningful and enjoyable activity without threats to their sense of security or self-esteem, (2) a consistent commitment of resources sufficient to provide a high quality public education to every child, (3) a deliberate process for establishing and achieving specific educational performance goals for every child, and (4) an effective mechanism for monitoring progress toward those goals and for holding educators accountable for their achievement.

skills, including social and emotional development based on the <u>educational potential</u> of the child.  Also, MGL c. 71B provides that the term special education is defined as "educational programs and assessments including special education classes and programs or services designed to develop the "educational programs and assignments including special education classes and programs **or services** designed to <u>develop the education potential</u> of children with disabilities "see In Re:  <u>Stoneham Public Schools</u>, BSEA # 13160, note 18.

The courts have provided, in its IDEA Decisions that the hearing officer, in compensatory education disputes and other kinds of disputes, have clear discretion, flexibility and breadth in creating an equitable remedy that is intended to cure the deprivation by making the student whole.  Once a right and a violation have been shown, the scope of a court's equitable powers to remedy past wrongs is broad for both breath and flexibility inherent in its equitable remedies, see *<u>Swann v. Charlotte- Mecklenburg Bd of Ed</u>*. 402 US 1, 15, (1971)  See also in Re<u>: *Dracut Public Schools*,</u> BSEA # 08-5330, P. 10 and P. 11.  In the leading compensatory education case of <u>*Reid v. District of Columbia* 4</u>01 F3d, 516 (D.C. Cir. 2005) the court made it clear the importance of utilizing its flexible and broad equitable authority to fashion relief that responds to the particular facts of the dispute so that relief will make up for what the student had been improperly denied.


**A.     Requirement to Exhaust Administrative Remedies**

Section 504 of the Rehabilitation Act which does not in every instance require exhaustion. The determinative question therefore is whether, in the context of this case, the exhaustion requirement of the IDEA extends to plaintiffs' claims under the Rehabilitation Act.

The IDEA requires state educational agencies to establish procedures to ensure that children with disabilities and their parents are provided impartial due process hearings with respect to the identification, evaluation and educational placement of a child with disabilities. The statute further provides for review in court of the state decision. The IDEA requires parties to exhaust administrative remedies before bringing a civil action, even in some cases where that action is brought under other federal disability statutes:

> [n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that <u>before the filing of a civil action under such laws seeking relief that is also available under this subchapter,</u> the procedures [for the impartial due process hearing and the administrative appeal of that hearing] <u>shall be exhausted to the same extent as would be required had the action been brought under this subchapter.</u>

20 § 1415(1) (emphasis added).

The First Circuit has broadly interpreted the exhaustion requirement of 20 U.S.C. § 1415(1) to include claims brought under other statutes, even if they seek damages not allowed by the IDEA. See, e.g., *Frazier v. Fairhaven Sch. Comm.,* 276 F.3d 52, 64 (1st Cir 2002) (exhaustion required even where plaintiffs seek money damages not available under the IDEA) *Weber v. Cranston Sch. Comm.,* 212 F.3d 41, 51-52 (1st Cir. 2000) (broad wording of the IDEA encompassed parent's retaliation claim brought under Section 504 of the Rehabilitation Act, therefore exhaustion was required); *Rose v. Yeaw,* 214 F.3d 206, 210 (1st Cir. 2000) (noting the "broad, encompassing" scope of the IDEA due process hearing). It noted that the exhaustion requirement is designed to "enablel] the agency to develop a factual record, to apply its expertise

to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy." *Rose,* 214 F.3d at 210 (quoting <u>*Christopher W. v. Portsmouth Sch. Comm.,*</u> 877 F.2d 1089, 1094 (1st Cir. 1989). 1089, 1094 (1st Cir. 1989)). Rehabilitation Act § 504 forbids organizations that receive federal funding, including public schools, from discriminating against people with disabilities. 29 U.S.C. § 794(b)(2)(B); *Mark H.,* 513 F.3d at 929; *Bird v. Lewis & Clark Coll.,* 303 F.3d 1015, 1020 (9th Cir. 2002). Section 504 provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *see also* 34 C.F.R. § 104.4. If an organization that receives federal funds violates Rehabilitation Act § 504 intentionally or with deliberate indifference, it may be liable for compensatory damages. *See Mark H.,* 513 F.3d at 930, 938.

## B.    Meaningful Access/Reasonable Accommodation

An organization that receives federal funds violates § 504 if it denies a qualified individual with a disability a reasonable accommodation that the individual needs in order to enjoy meaningful access to the benefits of public services. *See Alexander v. Choate,* 469 U.S. 287, 301-02 & n.21 (1985); *Mark H.,* 513 F.3d at 937; *Bird,* 303 F.3d at 1020, 1022.[7] Katelin's disability render her as a qualified individual as defined by 34 C.F.R. § 104.3(j), (l)(2), (m). Section 504 applies to Dennis-Yarmouth because it is a public school system. *See* 29 U.S.C. § 794(b)(2)(B); 20 U.S.C. § 7801(26)(A). Thus, Dennis-Yarmouth is also liable for damages for violating § 504 if it failed to provide Katlin a reasonable accommodation that she needed to enjoy meaningful access to the benefits of a public education, and did so with deliberate indifference. *See Mark H.,* 513 F.3d at 937-38; *see also* 29 U.S.C. § 794(a); 34 C.F.R. § 104.4.

### C. Deliberate Indifference

The Dennis-Yarmouth school system acted with deliberate indifference if it (1) "[had] knowledge that a harm to a federally protected right is substantially likely," and (2) "fail[ed] to act upon that likelihood." *Lovell v. Chandler,* 303 F.3d 1039, 1056 (9th Cir. 2002). Dennis-Yarmouth had knowledge that a harm to a federally protected right was substantially likely if Dennis-Yarmouth knew that Katlin needed accommodation of language specific services. *See id.* Dennis-Yarmouth failed to act upon that likelihood if it failed to adequately investigate whether those language based specific services were a reasonable accommodation. *See id.; Duvall,* 260 F.3d at 1139-40. Thus, Dennis-Yarmouth acted with deliberate indifference if it knew that Katlin needed language specific services in order to enjoy meaningful access to the benefits of a public education and failed to investigate whether those services were available as a reasonable accommodation.

34 C.F.R. § 104.33(a) requires that Dennis-Yarmouth "provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." Regulation § 104.33(b)(1)(i) explains that in order to provide a free appropriate public education, Dennis-Yarmouth must design the "regular or special education and related aids and services" provided to students with disabilities "to meet [the] individual educational needs of [those students] as adequately as the needs of non[-disabled] persons are met." 34 C.F.R. § 104.33(b)(1)(i).

Katlin's family  alleged that  DY violated 34 C.F.R § 104.33(b)(1)(i) because the education provided to Katlin through her junior year of high school was so inadequate that Katlin was unable to access *any* of the benefits of a public education as she was functioning at a the 2% being at a third grade level  in her ability to write, spell and read. Presumably, at a minimum,

Dennis-Yarmouth's education programs for its non-disabled students allow those students to access at least some benefits of a public education. Thus, Katlin's Family alleged, Dennis-Yarmouth did not provide appropriate services to meet her needs as adequately as the needs of other students are met. As discussed in detail above, the evidence presented raises a genuine issue of material fact as to whether Katlin needed language specific services in order to access the benefits of public education. The evidence also supports the allegation that the education provided Katlin was not designed to provide those language specific services.

Accordingly, Katlin's family raised genuine issues of material fact as to whether Dennis-Yarmouth failed to design any services for Katlin to include the language specific services necessary to meet Katlin's educational needs as adequately as the needs of non-disabled students were met. This raises a plausible § 104.33(b)(1)(i) claim.

In *Mark H.,* the court observed that "a disabled individual may be denied 'meaningful access' to public education when that education is not designed to meet her needs as adequately as the needs of other students are met." *Mark H.,* 513 F.3d at 938 n.14. Here, if, as the Katlin's Family alleged, Dennis-Yarmouth violated § 104.33(b)(1)(i) by failing to design any services for Katlin prior to her senior year so as to provide the her any access to the benefits of a public education, such a violation would also likely establish the denial of meaningful access. Consequently, Katelin's family raised genuine issues of material fact as to whether Dennis-Yarmouth violated Regulation § 104.33(b)(1)(i) in such a way that the violation denied Katlin meaningful access to the benefits of a public education.

The Katlin's Family has established that Dennis-Yarmouth acted with deliberate indifference by showing that: (1) Dennis-Yarmouth knew that its actions would likely result in a violation of Katlin's federally protected right to have education program that was designed to

meet her needs as adequately as the needs of other students are met and (2) Dennis-Yarmouth failed to act upon that likelihood. *See Lovell,* 303 F.3d at 1056.

Dennis-Yarmouth knew that it was obligated by 34 C.F.R. § 104.33(b)(1)(i) to design Katlin's to meet her needs as adequately as the as the needs of other students are met. Katlin's Family alleged that in order for Katlin's education to be designed to meet her needs as adequately as the needs of other students are met, Dennis-Yarmouth needed to design Katlin's services to include language based specific services. Katlin further alleged that Dennis-Yarmouth's did not design any services for Katlin to include language based specific services prior to just her senior year in the Dennis Yarmouth School District. As outlined above, evidence supports these allegations.

Thus, Katlin raised genuine issues of material fact as to whether Dennis-Yarmouth knew that its failure to design specific services to include language-specific services was likely to result in a violation of Katlin's federally protected rights, and failed to act upon that likelihood. Accordingly, the Katlin raised genuine issues of material fact as to whether the Dennis-Yarmouth school district  violated 34 C.F.R. § 104.33(b)(1)(i) with deliberate indifference.

The hearing officer ruled that "It is well accepted in Massachusetts that Compensatory education is an equitable remedy available within the context of special education.  It is a surrogate for the warranted education that a disabled child may have missed during periods when his or her IEP, or in this instant case, a 504 plan was so inappropriate that he or she was effectively denied FAPE.  *C. G. exrel, AS. V. Five Town Community School District* 513 F.3d 279, 290 (1st Cir. 2008) compensatory education is intended "to remedy past deprivations by a school

district. _Phel v. Mass. Dept. Of Ed._ 9F.3d 184, 188 (1st Cr. 1993)  Administrative Record Vol. 1, BSEA Exhibits P. 338-339.

The hearing officer also stated that "DY's reliance on student's grades and having passed the MCAS is not persuasive"  that she did not need additional services beyond her senior year of high school, Administrative Record, Vol. 1, BSEA Exhibit P. 339.  Hearing officer acknowledged the significant needs of Katelin limited her order for additional services for only 6 weeks being the time Mrs. Hewitt stopped her services in May of 2014 to Mid-June 2014 graduation day on page 28 of her hearing decision dated December 22, 2016, some 1.5 year after Katelin's senior year and after graduation from Brewster Academy. Administrative Record, Vol. 1 BSEA Exhibits P. 340.

The hearing officer ruled that reimbursement for Brewster was not granted eventhough Katelin's progress in the program was significant because Brewster was not a special education school.  Administrative Record, Vol. 1 BSEA Exhibits P. 340.

Massachusetts only has a limited number of special education schools which deal with language based disabilities and students without substantial emotional disabilities.  For a student to attend such a state licensed special education school, the school requires placement in the school by the school district except for limited numbers such as the Landmark School which does take private pay students.  The Dennis Yarmouth School District refused to consider a placement in any school beyond Katelin's senior year and made no suggestions to

the parents of possible options leaving the parent on her own with no guidance or suggestions of services beyond her senior year.

It is clear that the actions and non-actions of the Dennis Yarmouth School District in their years of refusal to provide needed services to Katelin was deliberately indifferent and caused significant delays in her needed services.  It is clear that she did make growth during her senior year due to the specialized tutoring she received from Mrs. Hewitt but need far more than just 6 weeks of services as ruled by the hearing officer she was still functioning at a 5th and 6th grade level.

Katelin's needs were significant to a level that six weeks of services was inappropriate.  As noted in the document from Brewster Academy, Administrative Record, Vol. III Parent's Exhibit P. 479 to 498, Katelin received significant help and demonstrated substantial improvement which ultimately brought her to a level that she could function at a college level.  Without the education provided by Brewster Academy, Katelin would never have been able to proceed to college

It has been argued by the Dennis Yarmouth School District that it was Mrs. O. whose actions or refusal to cancel the school's education request in the spring of 2013 however the cancellation of the evaluations was done by the superintendent, at a meeting with Mrs. O, as the Superintendent found the evaluation by Dr. Brefach to be excellent.  Superintendent Woodbury never disputed this fact during her testimony at the BSEA, Administrative Record, Vol. I BSEA Exhibits P. 134.

The Dennis Yarmouth School District had significant financial issues during the 2013-2014 school years which caused the Superintendent to lay off more than 30 school employees which did affect a broad range of students, Administrative Record, Vol. I P. 102-103. The Superintendent essentially focused on special needs student. The financial problem that the school district was having substantially affected services to children with special needs. This financial problem was a critical problem for the needs of children with unique issues and was a foundational reason why the Dennis Yarmouth School District did not provide Katelin the needed services, for her fifth year of high school, forcing the parents to place her in a program which offered specialized services to deal with her disability to their financial detriment. Clearly Katelin was denied an appropriate education but for a very limited time and required substantially more services which were provided by Brewster Academy.

Therefore, based on the foregoing there is no issue of material fact and the Plaintiffs are entitled to a judgment pursuant to Rule 56 of the Rules of Civil Procedure and Rule 12 C. Wherefore, the Plaintiffs request that this court vacate the ruling by the BSEA denying reimbursement for Brewster Academy which clearly did provide Katelin necessary, important, and excellent services and order the Dennis-Yarmouth School District reimburse Katelin and her parents for the costs related to her placement Brewster Academy, where she thrived.

RESPECTFULLY SUBMITTED,
The Plaintiffs
By their attorney,

/s/ Michael W. Turner Esq.

Michael Turner, Esq
BBO #: 565820
242 Wareham Road
P.O. Box 910
Marion, MA 02578
Tel: (508) 748-2362
Fax: (508) 748-6836
Email  mturner@meganet.net

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent by first class mail, postage prepaid to those indicated as non-registered participants on March 1, 2018

/S/ Michael W. Turner
Michael W. Turner