UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-10473-RGS

KATELIN O., ET AL.,

v.

MASSACHUSETTS BUREAU OF SPECIAL EDUCATION APPEALS, and
THE DENNIS-YARMOUTH REGIONAL SCHOOL DISTRICT

MEMORANDUM AND DECISION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

July 23, 2018

STEARNS, D.J.

After graduating from Dennis-Yarmouth High School in June of 2014, Katelin O. enrolled at Brewster Academy, a private New Hampshire boarding school, where she spent a year preparing for college. During her years as a public school pupil, Katelin's parents expressed repeated concerns to educators in the Dennis-Yarmouth Regional School District (Dennis-Yarmouth) that she might suffer from a learning disability. In December of 2012, an independent evaluation confirmed that Katelin presented with dyslexia. After intensive negotiation, in May of 2013, Katelin's parents and Dennis-Yarmouth agreed to a Section 504 plan, which was renewed later that year and remained in place until May of 2014. Two years later, Katelin's parents turned to the Bureau of Special Education Appeals (BSEA) seeking

reimbursement from Dennis-Yarmouth for the costs of sending Katelin to Brewster during her gap year. A BSEA Hearing Officer eventually determined that Katelin's parents' claim was mostly barred by the statute of limitations and that Brewster in any event had been an inappropriate choice for Katelin. The parents then appealed the BSEA's decision to this court on Katelin's behalf, invoking the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Before the court are the parties' cross-motions for summary judgment.

## BACKGROUND

In its decision, the BSEA described Katelin "as a bright, hard-working, extremely responsible, kind and personable young woman." BSEA Decision # 1607923 (BSEA Dec.) at 3 ¶ 2. From almost the beginning of her public schooling, Katelin's parents expressed concerns to school officials that she was laboring under a learning disability. In 2004, and again in 2007, Dennis-Yarmouth conducted informal evaluations of Katelin, concluding on each occasion that she was not eligible for special education services. *Id.* at 3 ¶ 3. Katelin's parents eventually arranged for Katelin to undergo an independent neuropsychological examination followed by a speech and language evaluation in December of 2012 and January of 2013. *Id.* at 4 ¶ 10

and Pls.' Concise Statement of Undisputed Facts at 1 ¶¶ 3-5. The neuropsychological examiner reported that Katelin "presented with significant language-based learning disability (dyslexia)." BSEA Dec. at 5 ¶ 11. Both of the evaluators recommended special needs accommodations for Katelin, including daily one-on-one tutoring by a "reading specialist to address her dyslexia." *Id.* at 8-11 ¶¶ 24 & 39.

In March of 2013, Katelin's parents presented the results of the evaluations to Dennis-Yarmouth school officials. *Id.* at 12 ¶ 40. When the school district requested consent to perform an evaluation of its own, Katelin's parents refused. *Id.* at 12 ¶ 44. On April 10, 2013, Dennis-Yarmouth held an IDEA "Team" meeting to discuss Katelin's diagnosis. *Id.* at 12 ¶ 45. While accepting the fact that Katelin suffered from dyslexia, the Team issued a "Finding of No Eligibility" because Katelin "was making effective progress in her general education courses at [Dennis-Yarmouth], some of which were honors level." *Id.* at 12-13 ¶ 45.

Katelin's parents disagreed with, but did not formally appeal, the Team's conclusion. Instead, on May 8, 2013, they met with the Dennis-Yarmouth Superintendent and Kenneth Jenks, Katelin's high school principal, to press her case. *Id.* at 13 ¶¶ 49-51. The meeting resulted in the preparation of a Section 504 Plan for Katelin, which included, among other

accommodations, three hours of one-on-one tutoring each week during the summer of 2013 by Sarah Hewitt, a nationally-recognized remedial reading specialist. *Id.* at 13-14 ¶¶ 51-55. On September 4, 2013, Katelin's Section 504 Plan, including the weekly tutoring sessions with Hewitt, was renewed and extended through her senior year of high school. *Id.* at 14 ¶ 53; ¶ 54. However, for unexplained reasons, Hewitt's tutoring came to an end in May of 2014, several weeks before the June 27, 2014 expiration date of Katelin's Section 504 Plan. *Id.* at 15 ¶ 58. Neither Katelin nor her parents objected. *Id.* at 15 ¶ 60.

In the fall of 2013, Katelin won early admission acceptance at two colleges. *Id.* at 16 ¶ 63. Apprehensive about her ability to keep pace with her peers in a college environment, Katelin told her parents in December of 2013 that she wanted to put off college enrollment for a year. *Id.* at 16 ¶¶ 65-66. Katelin's parents agreed and decided to send Katelin to Brewster for a fifth year of high school. *Id.* at 17-19 ¶¶ 67-68 & 83. On March 10, 2014, Katelin's parents requested assurances from Principal Jenks that Yarmouth-Dennis would pay for Katelin's year at Brewster. Jenks, however, rejected the request two days later, on March 12, 2014. *Id.* at 17 ¶ 69-70. Katelin turned 18 years of age on May 1, 2014, and received her diploma from Dennis-Yarmouth on June 27, 2014. *Id.* at 17-19 ¶¶ 72 & 82. She then attended a

"post-high school year at Brewster," where she received three instructional support sessions per week from Brewster teacher Kim Yau (who is not a certified reading or special education instructor). *Id.* at 21 ¶ 89, 28. Tuition and board at Brewster, according to its website, currently amounts to $62,600 per year.[1]

Following the refusal by Dennis-Yarmouth to reimburse the costs of the year at Brewster, Katelin's parents through an attorney filed two BSEA Hearing Requests in March and September of 2014, appealing the funding refusal. Both Requests were dismissed when the attorney failed to respond to Orders to Show Cause. BSEA Dec. at 17 ¶ 71, 20-21 ¶¶ 88 & 91. On April 4, 2016, Katelin's parents filed a third BSEA Hearing Request, claiming that Dennis-Brewster had failed its obligation to provide Katelin a Free and Appropriate Public Education (FAPE). *Id.* at 1. On December 22, 2016, the BSEA, in a written decision, found that while Dennis-Yarmouth had dropped the "proverbial ball" at "critical times," Katelin's remedies were largely barred on procedural grounds, because her parents had failed to contest the district's "no eligibility" finding in 2013 and had failed to prosecute the two Hearing Requests in 2014. *Id.* at 22, 26. According to the BSEA, the

---

[1] *See* Def.'s Response to Pls.' Concise Statement of Undisputed Facts at 17 ¶ 39; *Tuition and Fees*, BREWSTER ACAD., https://www.brewsteracademy.org/tuition (visited July 2, 2018).

applicable two-year limitations period had "extinguished" most of Katelin's claims, with the exception of the claim for equitable compensation for the period from May to mid-June of 2014, when Hewitt's tutoring had been prematurely ended before the expiration of Katelin's Section 504 Plan. *Id.* at 26-27. The BSEA also held that because Brewster "did not provide the specialized instruction recommended," Katelin's parents were not entitled to reimbursement from Dennis-Yarmouth for her post-graduate year. *Id.* at 28. On March 21, 2017, Katelin and her parents filed this Complaint in the district court seeking review of the BSEA decision under IDEA and Section 504 of the Rehabilitation Act, together with an award of attorney's fees.

STANDARD OF REVIEW

While before the court are the parties' cross-motions for summary judgment, a point of clarification is in order: In the case of IDEA, "a motion for summary judgment . . . is simply a vehicle for deciding the relevant issues, and the non-moving party is not entitled to the usual inferences in its favor." *Sebastian M. v. King Philip Reg'l Sch. Dist.*, 685 F.3d 79, 84-85 (1st Cir. 2012). Also, unlike in the usual summary judgment context, an entry of judgment is not precluded by the presence of disputed issues of material fact. *Id.* at 85. Rather, the judicial review of administrative proceedings under IDEA is conducted under an intermediate standard – "a more critical

appraisal of the agency determination than clear-error review," but "well short of complete *de novo* review." *Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1086-1087 (1st Cir. 1993). A court will thus give a BSEA Hearing Officer's decision "due weight" in its "thorough yet deferential" review of the administrative record. *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 989 (1st. Cir 1990).

## DISCUSSION

The parties advance arguments and counter-arguments on three main issues – the statute of limitations, Katelin's substantive entitlement to IDEA relief, and relief under Section 504 of the Rehabilitation Act. I will address each in turn.

### *Statute of Limitations*

Dennis-Yarmouth maintains that IDEA claims brought by Katelin and her parents predating April 4, 2014, are barred by the IDEA two-year statute of limitations, and that the BSEA Hearing Officer correctly applied the same limitations period to the Section 504 claims. *See* 20 U.S.C. § 1415(f)(3)(C); BSEA Hearing Rule I.C; BSEA Dec. at 22 n. 16 ("Although Section 504 is silent as to the applicable statute of limitations, the two-year statute of limitations applicable to IDEA cases is the statute most closely related to Section 504."). Katelin argues error in applying the two-year IDEA statute

7

of limitations to her, because in her view there is no IDEA statute of limitations on claims brought by students who have reached their majority. She also argues that in her case, Section 504 provides for a three-year statute of limitations that only began to run on May 1, 2014, the day of her eighteenth birthday. The parentage of these arguments is very dubious. Nothing in the IDEA, or the related case law, supports Katelin's assertion that adult students are exempted from IDEA's statute of limitations. In relevant part, IDEA says the following on the subject: "A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint . . . ." 20 U.S.C. § 1415(f)(3)(C). While subpart D of the section provides for exceptions to the timeline, these only apply to a child's parents: there is no exception listed for "adult students."[2] As the Hearing Officer persuasively noted, "because the rights accorded to an adult student under

---

[2] The three exceptions specified by the IDEA to the two-year limitations period are as follows. If a State has an "explicit time limitation" for a hearing request, it will control. 20 U.S.C. § 1415(f)(3)(C). Massachusetts does not have such a limitation. Additionally, if the parent failed to request a hearing because of "specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint," or because of "the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent," the two-year limitation does not apply. 20 U.S.C. § 1415(f)(3)(D). Katelin's Complaint does not allege facts supporting either the second or the third exception.

the IDEA mirror those of a parent, it is logical to conclude that the statute of limitations applies to an adult student in the same way that it applies to a parent." BSEA Dec. at 9. Where the idea that Section 504 of the Rehabilitation Act provides for a three-year statute of limitations applicable to adult students comes from is a mystery. Courts uniformly hold that it is the IDEA two-year statute of limitations that applies t0 Section 504 claims. *See, e.g., D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012) (Claimants "have the same two years to file an administrative complaint alleging a violation of the IDEA or § 504 of the Rehabilitation Act."); *Mr. & Mrs. D v. Southington Bd. Of Educ.*, 119 F. Supp. 2d 105, 115-116 (D. Conn. 2000) (§ 504 claims are "subject to the same statute of limitation preclusion applied to the IDEA claims.").

*Relief under the IDEA*

This is simply a reprise of the statute of limitations argument. Dennis-Yarmouth maintains that the BSEA correctly relied on the two-year statute of limitations in dismissing Katelin's IDEA claims. *See* BSEA Dec. at 26 ("Claims and remedies available in 2013 were no longer available in 2016, [and] all of Parents'/Student's claims under IDEA were lost."). Katelin repeats the argument without further elaboration that the BSEA erred in

9

refusing to consider Dennis-Yarmouth's actions prior to April of 2014. Since the premise is wrong, the argument fails.

*Relief under Section 504 of the Rehabilitation Act*

Katelin contends that Dennis-Yarmouth violated Section 504 of the Rehabilitation Act by failing to provide her meaningful access to reasonable accommodations, and did so with deliberate indifference. Therefore, the argument goes, she is entitled to compensatory reimbursement for her year at Brewster. Dennis-Yarmouth, for its part, relies (correctly, I believe) on the Hearing Officer's determination that Katelin's parents' acceptance without objection of the implementation of her Section 504 Plan forecloses any resulting Plan-based claim of inadequate treatment (except for the brief period when Hewitt's tutoring ended without explanation or substitution). BSEA Dec. at 27-28.

Dennis-Yarmouth next argues that even if Katelin's Section 504 Plan fell short of FAPE standards, her parents decision to resort to self-help by enrolling her at Brewster was (as the Hearing Officer yet again found) an inappropriate remedy for her special needs. *See Mr. I ex rel. L.I. v. Maine Sch. Admin. Dist. No. 55,* 480 F.3d 1, 24 (1st Cir. 2007) (Parental removal from a public school and placement in a private program cannot be "reasonably calculated to enable the child to receive educational benefit" if

10

the private program does not offer "some element of special education services in which the public school placement was deficient."), quoting *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 523 (6th Cir. 2003).

Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability in the United States, [. . .] shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794(a). The Act requires federally-funded entities to offer eligible students "meaningful access" to "reasonable accommodations." *Alexander v. Choate*, 469 U.S. 287, 301 (1985); *Theriault v. Flynn*, 162 F.3d 46, 48 (1st Cir. 1998). To give content to the requirement of meaningful access, a school district must prepare in consultation with a child's parents a FAPE identifying "regular or special education and related aids and services that [. . .] are designed to meet individual educational needs of handicapped persons as adequately as the needs of non-handicapped persons are met." 34 C.F.R. § 104.33(b)(1). In addition to establishing that she was denied an adequate FAPE, a plaintiff in a Section 504 case must also demonstrate that "the denial resulted from a disability-based animus." *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 40 (1st Cir. 2012); *see also Lesley v. Hee Man Chie*, 250 F.3d 47, 53 (1st Cir.

2001) (the plaintiff must show that services were denied "solely by reason of her disability.").

Dennis-Yarmouth does not dispute that Katelin is a qualified individual under Section 504. Katelin also appears to agree that her Section 504 specialized supervision under Hewitt's tutelage was appropriate. *See* Pls.' Mot. for Summ. J. at 12 ("It is clear that she did make growth during her senior year due to the specialized tutoring she received from Mrs. Hewitt."). Therefore, the only relevant timeframe for the assessment of Katelin's Section 504 claims is the six-week window between the beginning of May and mid-June of 2014, when Hewitt's tutoring stopped. On this issue, Katelin has alleged no facts suggesting that the cessation of Hewitt's services was based on "disability-based animus." *Esposito*, 675 F.3d at 40. Katelin's only claims of animus, or "deliberate indifference," are directed at Dennis-Yarmouth's refusal to provide her with a FAPE prior to May of 2013. *See* Pls.' Mot. for Summ. J. at 9-10 ("Dennis-Yarmouth's [sic] did not design any services for Katlin [sic] to include language based specific services prior to just her senior year."). [3] Whatever the merits of the argument, it is time-barred for the reasons previously explained.

---

[3] Katelin's arguments on this issue in her "Response to Defendant's Response to Plaintiff's Motion" are not persuasive.

Even assuming, *arguendo*, that Katelin could show that the untimely cessation of her tutoring sessions arose from animus towards her dyslexia, the unilateral decision to enroll her at Brewster without input from Dennis-Yarmouth was an inappropriate choice of remedies. It is true, that a public school district that cannot provide a disabled student with an adequate FAPE "may be obliged to subsidize the child in a private program." *C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist.*, 513 F.3d 279, 284 (1st Cir. 2008), citing *Burlington Sch. Comm. v. Mass. Dep't of Educ.*, 471 U.S. 359, 370 (1985). However, a district will not be required to reimburse the expense of a private education if the private school "does not offer any of the special education services recommended by the experts." *Mr. I*, 480 F.3d at 24. Moreover, a court entertaining a prayer for equitable relief must consider "all relevant factors" in order to determine "the appropriate and reasonable level of reimbursement that should be required." *Florence Cty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 16 (1993). If the court finds the private school costs unreasonable under the circumstances, "total reimbursement will not be appropriate." *Id.* "Parents who unilaterally change their child's placement [. . .] without the consent of state or local school officials, do so at their own financial risk." *Burlington,* 471 U.S. at 374-375 (1985).

Katelin's neuropsychological and language/speech evaluators both recommended that she receive individualized instruction from a qualified "reading specialist." BSEA Dec. at 8-11 ¶¶ 24 & 39. While Hewitt fit that bill as a nationally certified reading specialist, Ms. Yau, who was untrained and uncertified in both reading and special education, did not. As such, Brewster did not provide Katelin with an appropriate (and therefore reimbursable) special education.[4]

The BSEA ruled, and Dennis-Yarmouth does not contest, that Katelin was "entitled to compensatory . . . specialized instruction in reading and writing by a qualified individual such as Ms. Hewitt" for the period between May and mid-June of 2014. *Id.* at 27-28; *see* Def.'s Opp'n to Pls.' Mot. for Summ. J. at 11. The court would prefer that the parties agree on a reasonable sum to compensate Katelin and her parents for that agreed violation without further court intervention.

ORDER

For the foregoing reasons, Dennis-Yarmouth's motion for summary judgment is <u>ALLOWED</u> as follows. All claims arising from events prior to

---

[4] Additionally, the expanse and expense of the chosen remedy is disproportionate to Dennis-Yarmouth's relatively minor FAPE violation during the brief window between May of 2014 and Katelin's graduation from Dennis-Yarmouth on June 27, 2014.

14

April 4, 2014 are <u>DISMISSED</u>. Katelin's cross-motion for summary judgment is <u>ALLOWED</u> with respect to the FAPE violation that occurred between May and June of 2014. The parties will meet to agree on a suitable compensatory sum to be paid to Katelin and her parents for that violation and report to the court within thirty (30) days of the date of this decision on the results.

    SO ORDERED.

    <u>/s/ Richard G. Stearns</u>
    United States District Judge